1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT
9                     EASTERN DISTRICT OF CALIFORNIA
10
11   AIDA AMANDA A. A.,
12              Petitioner,                  No. 1:25-cv-01994-TLN-SCR
13
14         v.                                **ORDER**
15   CHRISTOPHER CHESTNUT, et al.,
16              Respondents.
17
18        This matter is before the Court on Petitioner Aida Amanda A. A.'s [1] ("Petitioner")
19   Motion for a Temporary Restraining Order ("TRO").  (ECF No. 3.)  For the reasons set forth
20   below, Petitioner's Motion is GRANTED.
21   ///
22   ///
23   ///
24
25   [1]   As recommended by the Committee on Court Administration and Case Management of
     the Judicial Conference of the United States, the Court omits Petitioner's full name, using only
26   his first name and last initials, to protect sensitive personal information.  *See* Memorandum Re:
     Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court
27   Administration and Case Management, Judicial Conference of the United States (May 1, 2018),
     https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.  The Clerk of Court
28   is directed to update the docket to reflect this change accordingly.

                                                    1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a native and citizen of Peru who entered with inspection on May 27, 2023 seeking asylum. (ECF No. 3 at 3.) When Petitioner arrived in the United States, federal agents briefly detained her, determined she was not a flight risk or danger to the community, and released on her own recognizance with a notice to appear for removal proceedings in immigration court. (*Id.*) Since then, Petitioner alleges she has done everything the Government has asked her to do: she has diligently attended every Immigration and Customs Enforcement ("ICE") and United States Citizenship and Immigration Services ("USCIS") appointment and check in. (*Id.*) Petitioner does not have an order of deportation and has an asylum petition pending. (*Id.*) Petitioner currently resides with her significant other and two children aged twenty-one and nineteen. (*Id.*) Petitioner works in the agricultural industry and does not have a criminal record. (*Id.* at 5.)

On October 20, 2025, Petitioner was detained during a routine ICE visit. (*Id.* at 3.) On December 23, 2025, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.) The same day, Petitioner filed the instant TRO. (ECF No. 3.)

## II. STANDARD OF LAW

For a TRO, courts consider whether Petitioner has established: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, Petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to

succeed in a request for a TRO. *Id.* at 1134–35.

**III.   ANALYSIS**[2]

A.   Likelihood of Success on the Merits

Petitioner has established a likelihood of success on her due process claim. The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

As for the first step, the Court finds Petitioner has raised serious questions as to whether she has protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). As stated, Petitioner was released on her own recognizance shortly after her initial detention on May 27, 2023. (ECF No. 3 at 3.) For two and a half years, she built a life and established a community in Concord, California. (*Id.* at 5.) Moreover, she has attended every requisite appointment and check-in. (*Id.* at 3.) As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a

---

[2] The Court finds Petitioner has met the requirements for issuing a temporary restraining order without notice. *See* Fed. R. Civ. P. 65(b). Petitioner has filed the requisite affidavit and notified Respondents via email on December 23, 2025 that she filed the motion. (ECF No. 5.) *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were met without notice); *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (same).

3

clear interest in her continued freedom. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

As to the second step – what procedures or process is due – the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established her due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention. As discussed above, Petitioner was out of custody for two and a half years, had built a life in Concord, and attended every requisite check in. Despite that, Petitioner has now been detained for almost two months without being afforded a hearing. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by her detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any bond or custody redetermination hearing. "Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *4 (E.D. Cal. Sept. 9, 2025) (internal quotation and citation omitted). (ECF No. 3 at 3.) Petitioner has no criminal history and represents she has attended every requisite check-in. Petitioner claims she was informed at the time of her detention that she violated the conditions of her release by not properly downloading pictures on her phone. (*Id.*) Based on this record, the Court finds there is a serious likelihood Petitioner will be erroneously deprived of her liberty interest. Moreover, without any procedural safeguards to determine whether her detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL

2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). As this Court stated recently, it would be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on her asylum case than to continue to detain her.

On balance, the Court finds the *Matthews* factors demonstrate Petitioner is entitled to due process – a hearing to determine whether her detention was warranted. Accordingly, with respect to her due process claim, Petitioner has shown she is likely to succeed on the merits.

### B.   Irreparable Harm

Petitioner has also established she will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention[.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. Petitioner has been detained for over two months and has been separated from her family. Even if this was not sufficient to establish irreparable harm, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

### C.   Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds there is no equitable reason that would tip the balance in the Government's favor, because the Government faces no hardship. First, it is clear on this record that the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Second, "it is always in the public interest to prevent the violation of a party's

constitutional rights." *Melendres*, 695 F.3d at 1002.  Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).

In sum, these last two factors also weigh in Petitioner's favor.  Therefore, the Court GRANTS Petitioner's Motion for a TRO.  (ECF No. 3.)

### IV. CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for a Temporary Restraining Order (ECF No. 3) is GRANTED;
2. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011);
3. Petitioner Aida Amanda A. A. shall be RELEASED IMMEDIATELY from Respondents' custody;
4. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-day notice and a pre-deprivation/custody hearing before a neutral decisionmaker, where the Government shall bear the burden of proving, by clear and convincing evidence, that Petitioner poses a danger to the community or a flight risk, and Petitioner shall be allowed to have her counsel present.
5. **Respondents are ORDERED TO SHOW CAUSE** why this Court should not convert this temporary restraining order into a preliminary injunction requiring Respondents to continue to abide by this Court's order.  Respondents shall file responsive papers by **Tuesday, December 30, 2025**.  Petitioner may file a reply, if any, by **Monday, January 5, 2026**.  **The parties shall indicate in their briefing whether they waive hearing**.  Fed. R. Civ. P. 65(b)(3).  The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule.
6. Petitioner is ORDERED to immediately serve this Temporary Restraining Order and Order to Show Cause on Respondents at usacae.ecf2241-imm@usdoj.gov.  Petitioner

1 | shall file proof of such service no later than **10 a.m. on December 24, 2025.**

2 | 7. Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the Temporary Restraining Order on two days' notice to Petitioner. Fed. R. Civ. P. 65(b)(4).

3 | 8. The Clerk of Court is DIRECTED to update the docket to only list Petitioner's first name and last initial.

IT IS SO ORDERED.

Date: December 23, 2025

_____
Troy L. Nunley
Chief United States District Judge